**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ANTHONY G. PRESCOTT, #02174108** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21cv21** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

*Pro Se* Petitioner Anthony G. Prescott, a former inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Aileen Goldman Durrett for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Denton County convictions, Cause No. F15-1942-211. On November 17, 2017, a jury found Petitioner guilty of two counts of robbery. (Dkt. #15-18, pp. 89-90). The trial court sentenced Petitioner to ten years' confinement for each count, to be served concurrently. (Dkt. #15-18, pp. 89-90).

Petitioner appealed his convictions, which were affirmed on September 19, 2019. *Prescott v. State*, No. 07-18-00022-CR, 2019 WL 4561389 (Tex. App. Sept. 19, 2019) (Dkt. #15-2). Petitioner filed a petition for discretionary review ("PDR") (Dkt. #15-13), which the Texas Court of Criminal Appeals ("TCCA") refused on January 29, 2020. *Prescott v. State*, No. PD-1089-19.

1

As relevant here, Petitioner filed an application for state habeas corpus relief on July 2, 2020.[1] (Dkt. #16-9, pp. 5-100). On October 1, 2020, the state habeas court adopted the State's Proposed Findings of Fact and Conclusions of Law as its own and recommended Petitioner's application be denied. (Dkt. #16-10, p. 190). On December 2, 2020, the TCCA denied the application without a written order on the findings of the state habeas court without a hearing and on the court's independent review of the record. (Dkt. #16-8).

Petitioner filed the instant petition (Dkt. #1) on January 6, 2021.[2] Petitioner asserts the following claims for relief:

(1)    Trial counsel and appellate counsel were ineffective.

(2)    The combined impact of judicial bias, due process denial, violation pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), prosecutorial misconduct, selective prosecution and discrimination, and insufficient evidence resulted in cumulative error.

(3)    Petitioner's arrest violated the Fourth Amendment, and the conditions of his confinement violated his Eighth Amendment rights.

(4)    Petitioner's earned good time and work time credits were only considered for parole eligibility, not release to mandatory supervision.

(Dkt. #1, pp. 6-7; Dkt. #1-1). The Director filed a response, arguing Ground Two is unexhausted and procedurally barred, Ground Three is not cognizable on habeas review, and the remaining claims are without merit. (Dkt. #14). Petitioner filed a reply.[3] (Dkt. #17).

---

[1] Petitioner's first state habeas application was dismissed as prematurely filed. (Dkt. #16-1).

[2] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on January 6, 2021. (Dkt. #1, p. 10).

[3] Petitioner has since been released on parole but is still serving his sentences for robbery; if he successfully completes parole, he is scheduled to be released from Texas Department of Criminal Justice custody on January 7, 2027. (Dkt. #25, p. 2; Dkt. #25-1, p. 3). An individual serving his sentence on parole or supervised release satisfies the "in custody" requirement of 28 U.S.C. § 2254. *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (prisoner on parole was still "in custody" under his unexpired sentence). Thus, Petitioner satisfies the "in custody" requirement necessary to challenge his Texas convictions.

## II.  FACTUAL BACKGROUND

The Seventh District Court of Appeals set out the facts as follows:

The two counts of robbery for which appellant was indicted arose from threats he made against two members of a family, causing them to accede to his demand for the keys to their car.

At trial, the State presented evidence to show that in early June 2015, a stepfather, mother and adult daughter were staying at a Denton hotel. After an outing, the family returned to the hotel. On their return, the stepfather, Robert, was driving, his wife was in the passenger seat, and the daughter in the back right-hand seat. The daughter, then twenty-five, testified she got out of the car first. Appellant approached her and asked her to give him the car keys. She tapped on her mother's passenger-side window to get his attention. Appellant grabbed the daughter's arm, and told her, "give me the keys or I will hurt you." Appellant's other arm was behind his back and she could not see his hand. Robert got out of the driver's seat and reached to get a gun he carried. Then realizing the gun was in the hotel room, Robert told appellant he could have the car if he would let his family go. Appellant told him "give me your f**king keys to your car or I'm going to hurt your daughter."[2]

> [FN2] Robert recounted the events a little differently, but the differences are not pertinent to appellant's issues.

Robert gave appellant his keys and appellant began to get into the car. As he did so, Robert slammed the car door on him. Appellant asked him why he was trying to "hurt my family."[3] Robert testified appellant then either dropped the keys or threw them at him and "went to try to run away." He chased appellant but stopped when appellant went into the hotel lobby. Appellant ran into the hotel and, after trying to kick in several doors on the third floor and yelling "let me in," finally went into a room.[4] Two responding officers later entered that room and arrested appellant.

> [FN3] Some witnesses said appellant asked, "why he was trying to hurt him."
>
> [FN4] Before the robbery took place, appellant did something similar. He went to the third floor and kicked on doors, saying "let me in."

Robert testified that during the incident, appellant said something about his family and seemed agitated. Other witnesses, including the daughter, a responding officer, and a bystander, testified appellant said his family had been "kidnapped by police" and was being "held hostage by the cops." Some of the witnesses also described appellant's demeanor as "aggressive," "belligerent," and "real erratic . . . very

3

agitated, very angry." The front desk hotel clerk said appellant "seemed very confused and kind of aimless." The clerk also agreed that he believed appellant posed a danger to him and to the guests of the hotel.

After the jury heard the evidence presented, it found appellant guilty of each count of robbery. The court then held a punishment hearing after which it assessed the punishment noted. . . .

*Prescott*, No. 07-18-00022-CR, 2019 WL 4561389, at *1 (Dkt. #15-2, pp. 2-3).

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)). Where, as here, "the state habeas court and trial court are one in the same," the presumption of correctness afforded the state habeas court's factual determinations is "especially strong." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[4] *Wilson v. Sellers*, 584 U.S. ___, ___, 138 S. Ct. 1188, 1192 (2018).

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to

---

[4] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 584 U.S. at ___, 138 S. Ct. at 1192; *Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

### A.  Ineffective Assistance of Counsel Claims (Ground One)

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show counsel's performance was deficient. *Id.* To establish deficient performance, he must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28

8

U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing *pro se* pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *see also Green v.*

*Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

### 1. Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel provided ineffective assistance when he "provided grossly insufficient representation, both regarding his performance pre-trial and during the trial proceeding." (Dkt. #1, p. 6). In his federal petition, Petitioner does not provide one fact or example of how trial counsel was ineffective. In his memorandum (Dkt. #1-1), the only specific allegation of ineffective assistance is that trial counsel failed to obtain security camera footage from the scene of the crime. (Dkt. #1-1, p. 6). In his reply, Petitioner complains that photographs provided by the State were fabricated and trial counsel should have submitted them to the FBI for verification, that trial counsel hired a psychologist who was biased against him, and that trial counsel ignored, or was unaware of, a police report allegedly proving that his family member's vehicles were located in the parking lot of the hotel at issue in one of the counts, and that trial counsel threatened not to represent him if he chose to testify. (Dkt. #17, pp. 12-14). The court understands the crux of Petitioner's ineffective assistance claims against trial counsel stem from trial counsel's alleged failure to investigate and prepare for trial.

The duty of defense counsel to investigate is set forth in *Strickland*:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91. "This duty to investigate and prepare is, however, far from limitless, and not every breach thereof will mean that counsel has failed to render reasonably effective assistance. '(C)ounsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers.'" *Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (citation omitted). The reasonableness of investigation decisions depends in part on information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). To establish an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the proceeding. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

In his state habeas application, Petitioner raised multiple allegations of ineffective assistance of trial counsel. Trial counsel Joseph Zellmer's affidavit (Dkt. #16-10, pp. 3-8) submitted in response to those claims provided in relevant part as follows:

> **Issue #2:** *whether counsel adequately prepared for trial, conducted a pre-trial investigation, and represented Applicant to the best of his ability (please provide examples).*

> **Attorney response to Issue #2:** I did adequately prepare for trial although most of the preparation was done without the assistance of Mr. Prescott. See Vol. 2 of the Reporter's Record. Mr. Prescott was difficult to reach and it was very difficult to get him to schedule an appointment. Prior to trial for example, he missed appointments on August 8, 2017 and October 5, 2017. In fact, my staff and I were shocked when he did show up for trial on August 30, 2017, because he had been unresponsive to our attempts to contact him.

> I reviewed all of the discovery provided by the State. I had an investigator appointed as well as a psychologist to help me in my preparation. I spent a considerable amount of time locating an audio-visual expert who could enhance the zoom and quality of videos that were provided in discovery at a reasonable cost. That effort was expended to follow through on a claim of Mr. Prescott's that ultimately was not accurate. I received and reviewed records from Colorado, as well as numerous mental health records.

*Issue #3: whether counsel examined evidence prior to trial and whether or not counsel was "surprised" by the introduction of any of the State's evidence, including Applicant's "book in" photo.*

**Attorney response to Issue #3:** As far as the review of evidence, see #2 above. I was not surprised by any of the evidence at trial.

*Issue #4: whether counsel supported Applicant's right to testify until a staff member from the District Attorney's Office allegedly told counsel that Applicant's testimony would harm the State's case against Applicant.*

**Attorney response to Issue #4:** Not once did I support Applicant's desire to testify. His statements were often nonsensical in light of the evidence. As part of my investigation, I did learn from a family member that once Mr. Prescott believed something had happened, he would not change his view even in light of video evidence to the contrary. His testimony would only have harmed his case. He did testify at punishment. Reporter's Record Vol. 6, pp. 42-63.

No one from the District Attorney's office told me that Applicant's testimony would harm the State's case against Appellant.

*Issue #5: whether counsel threatened not to represent Applicant if he chose to testify.*

**Attorney response to Issue #5:** I never told Applicant that I would not represent him if he chose to testify.

*Issue #6: whether Applicant discussed affirmative defenses with counsel such as duress, necessity, and defense of a third party, and why such defense(s) were not utilized.*

**Attorney response to Issue #6:** Defenses were discussed. The problem with the defenses, such as duress, necessity, and defense of a third party, was that the facts did not support those defenses. This is one of those situations where Applicant would not change his view despite significant evidence to the contrary.

*Issue #7: what was counsel's theory of defense in this case.*

**Attorney response to Issue #7:** The theory of the defense was that, if Applicant was guilty, he was guilty of a lesser offense due to his strange behavior which was obviously because of mental health issues. The Judge did grant a charge on a lesser included offense of attempted unauthorized use of a vehicle.

*Issue #8: whether or not counsel viewed security footage from the scene of the crime prior to trial (including hotel security cameras).*

**Attorney response to Issue #8:** I viewed all videos provided in discovery. I was appointed to this case 13 months after the alleged offense date so my ability to collect additional information about the scene was hampered.

*Issue #9: whether or not counsel investigated Applicant's mental health history and presented any such evidence at trial as mitigation.*

**Attorney response to Issue #9:** I did investigate Applicant's mental health history. I had Dr. Kelly Goodness, a respected psychologist, appointed to assist me. I had his sister, who had significant knowledge of his mental health history, testify at punishment. It is my belief that Applicant only received a 10 year sentence because the judge took into account his mental health history. A review of the Reporter's Record will show that my focus at trial was on his mental health.

. . . .

*Issue #11: whether counsel was aware of Applicant's strained relationship with his sister, and counsel 's trial strategy, if any, in calling her as a witness in this case.*

**Attorney response to Issue #11:** I was aware of Applicant's strained relationship with his sister. However, Applicant contacted her after the trial, but before punishment, and then she contacted me. She was extremely helpful in giving me his history especially in regard to his mental health issues and long term smoking drugs laced with formaldehyde. I think her testimony had a significant impact on Applicant only getting a 10 year sentence.

*Issue #12: whether counsel investigated the sufficiency of the evidence supporting the second count charged and the result of any such investigation.*

**Attorney response to Issue #12:** I thoroughly investigated this case. I had an investigator appointed. I reviewed all of the discovery. I had a video enhanced, as I have mentioned above. The one person who did very little on this case was the Applicant. See Reporter's Record Vol. 2.

*Issue #13: whether counsel attempted to circumvent charges against Applicant by relying on Applicant's mental illness or mental history, and whether counsel attempted to have Applicant partake in Denton County's mental health court program.*

**Attorney response to Issue #13:** My notes indicate extensive investigation into his mental health and gathering substantial documentation in regard to his mental health treatment. A review of the record will show that Applicant's mental health history was a bedrock of the defense. On August 16, 2016, I submitted Applicant's name for consideration for the Mental Health Treatment Court. On October 10, 2016, I was informed by the ADA for mental health court that Applicant was not appropriate for the Mental Health Treatment Court.

13

. . . .

***Issue #15:*** *whether the State refused to give counsel access to the police report in this case and whether counsel was aware that Applicant's family member's vehicles were located in the parking lot of the hotel at issue in one of the counts against him.*

**Attorney response to Issue #15:** The State provided me with significant discovery. As far as the Applicant's family member's vehicles being located in the parking lot, there was no evidence to support this.

***Issue #16:*** *any other information relevant to assisting this Court in resolving Applicant's claims in light of affiant's specialized knowledge.*

**Attorney response to Issue #16:** Applicant received a probation offer. See Reporter's Record Vol. 2. He insisted on going to trial despite significant evidence against him and despite my recommendation that he accept the probation offer.

(Dkt. #16-10, pp. 3-8) (quotation marks omitted).

The state habeas court—one in the same with the trial court—made the following relevant

findings:

36.    Zellmer was prepared for trial despite Applicant having moved to West Texas (State's Answer, Exhibit MM).

37.    Zellmer's affidavit is credible.

38.    The court does not find Applicant credible.

39.    Zellmer reviewed discovery provided by the State, had an investigator and a psychologist appointed, located an audio-visual expert to enhance the quality of the videos provided in discovery, and reviewed records from Colorado and numerous mental health records.

. . . .

41.    The defenses urged by Applicant are not supported by the facts of his case.

42.    The defense strategy utilized in this case was that if Applicant was guilty, he was guilty of a lesser included offense due to his strange behavior which was the result of some type of mental health issue (State's Answer, Exhibit MM).

43.    A jury charge on the lesser-included offense of attempted unauthorized use of a vehicle was given in this case (State's Answer, Exhibit MM).

44.    Zellmer viewed all videos provided in discovery (State's Answer, Exhibit MM).

45.    All video footage was provided to counsel during discovery.

. . . .

49.    Zellmer spoke to Applicant's sister only after Applicant gave counsel her contact information (State's Answer, Exhibit MM).

50.    Applicant's sister provided Zellmer with information relating to Applicant's mental health history and previous drug abuse (State's Answer, Exhibit MM).

51.    No one from the District Attorney's Office or the court's staff told Zellmer that Applicant's testimony would hurt the State's case (State's Answer, Exhibit MM).

52.    Zellmer did not support Applicant's desire to testify, but did not threaten to not represent him if he chose to testify (State's Answer, Exhibit MM).

53.    Applicant testified at the punishment portion of his trial.

. . . .

57.    Counsel was not surprised by any of the evidence admitted at trial (State's Answer, Exhibit MM).

(Dkt. #16-10, p. 170-73).

The state habeas court then made the following conclusions of law:

1.    Applicant claims that his counsel was ineffective for a multitude of reasons (Application at 6-7). To obtain habeas-corpus relief for ineffective assistance of counsel under *Strickland v. Washington*, an applicant must show that his trial counsel's performance was unconstitutionally deficient and "that there is a 'reasonable probability' — one sufficient to undermine confidence in the result — that the outcome would have been different but for his counsel's deficient performance." *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

To establish ineffective assistance of counsel, the courts perform a two prong test. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, an applicant must show that counsel's performance was deficient; second, an applicant must show the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

"Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

. . . .

5.  A claim of ineffective assistance based on trial counsel's general failure to investigate the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App—Houston [14th Dist.] 2009, pet. ref'd). Because Applicant has failed to allege the requisite facts to support his burden of proof, this issue should be denied.

. . . .

7.  Applicant asserts that several affirmative defenses were applicable to his case (i.e., duress, necessity, defense of third person) but were not raised by counsel at trial (Memorandum of Law at 6, 31). Applicant does not provide any facts to support this contention, and thus has failed to carry his burden of proof. *See Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (an appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective). Thus, this issue should be denied.

8.  Applicant alleges that the State withheld the police report in this case, which provides proof that Applicant's families vehicles were in the parking lot at the time of the offense (Applicant's Memorandum of Law at 24). He also alleges that the State withheld video footage and officer camera videos and that admission of those videos would have impeached witness testimony about Applicant concealing a weapon during the offense at hand, and leading a victim to the opposite side of their vehicle (Applicant's Memorandum at 25, 27).

Based on the evidence, the video would not have impeached witness testimony that Applicant had a weapon; the witness testified that he did not know if Applicant had a weapon. Because Applicant has failed to carry his burden of proof, these issues should be denied. *See Perez*, 310 S.W.3d at 893.

9.      Applicant fails to allege what part of his sister's testimony was harmful to his case, and how her testimony was the fault of counsel allegedly not preparing her to testify. Even if there was any prejudicial testimony stemming from her testimony, it is possible that a witness may refer to inadmissible testimony despite being warned not to do so. Accordingly, Applicant has failed to prove deficient performance. *Thompson*, 9 S.W.3d at 813. This issue should be denied.

10.     Applicant testified during the punishment portion of his case. Applicant's counsel did not threaten to not represent Applicant if he testified even though counsel felt that Applicant's nonsensical statements could harm his case. Applicant has failed to carry his burden of proof as to deficient representation or prejudice by allegedly threatening not to represent Applicant if he chose to testify. *See Perez*, 310 S.W.3d at 893. Thus, this issue should be denied.

11.     As to Applicant's allegation that counsel was surprised by evidence admitted at trial because counsel failed to prepare, and the State was aware of such because of their illegal surveillance of his conversations with counsel, Applicant has failed to carry his burden of proof. *See Perez*, 310 S.W.3d at 893. This issue should be denied.

(Dkt. #16-10, pp. 174-75, 179, 180-81, 182). The TCCA subsequently denied relief without a written order based on the findings of the state habeas court and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner fails to demonstrate that the state court's adjudication of his ineffective assistance claims was contrary to, or an unreasonable application of, *Strickland*. The state court's credibility findings are supported by the record in this matter, which indicates that trial counsel thoroughly investigated the State's evidence, pursued investigations based on information provided by Petitioner, reviewed discovery provided by the State, had an investigator and a psychologist appointed, located an audio-visual expert to enhance the quality of the videos

provided in discovery, obtained and reviewed Petitioner's mental health records, was prepared for trial, and presented mitigating evidence of Petitioner's mental health. The presumption of correctness afforded the state habeas court's factual determinations is "especially strong" given that the state habeas court and trial court are one in the same. *See Mays*, 757 F.3d at 214. Petitioner has not shown either deficient performance or prejudice with regard to trial counsel's pretrial investigation and preparation for trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (holding that, without a specific, affirmative showing of precisely what evidence or testimony was rendered unavailable due to a trial counsel's failure to investigate, the petitioner had not established *Strickland*'s prejudice requirement). Indeed, Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, or are refuted by the record, or involve strategic and tactical decisions made by trial counsel, all of which generally do not entitle a petitioner to federal habeas relief. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (providing "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"); *Strickland*, 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green*, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would

18

have revealed and how it would have altered the outcome of the trial"). Accordingly, Petitioner's ineffective assistance of trial counsel claims are without merit and should be denied.

### 2. Ineffective Assistance of Appellate Counsel

Petitioner also asserts that appellate counsel was ineffective because she "failed to present various grounds" on appeal and labored under a conflict of interest. (Dkt. #1, p. 6). In the federal petition, Petitioner does not identify any specific claim that appellate counsel failed to raise or provide any fact or example of how appellate counsel labored under a conflict of interest. Based on Petitioner's state habeas application and reply (Dkt. #17), it appears Petitioner is arguing that appellate counsel should have raised claims of ineffective assistance of trial counsel on appeal but did not do so based on her relationship with trial counsel, which indicates appellate counsel labored under a conflict of interest.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, a petitioner claiming ineffective assistance of appellate counsel must show deficient performance and prejudice. *Smith,* 528 U.S. at 285. To establish that appellate counsel's performance was deficient, the defendant must show that counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* The defendant must also establish prejudice by demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.* As the Fifth Circuit Court of Appeals explained:

Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[ ] out weaker arguments on appeal'" and focus on key issues.

*Higgins v. Cain*, 720 F.3d 255, 265 n.41 (5th Cir. 2015) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

In response to Petitioner's claim that appellate counsel rendered ineffective assistance, appellate counsel Grace Wren submitted an affidavit. (Dkt. #16-9, pp. 123-26; Dkt. #16-10, pp. 1-2). Appellate counsel explained that she did not raise certain issues on appeal, including allegations of ineffective assistance of trial counsel, because the claims were either without merit, not preserved for review, or "not supported by a plain reading of the appellate record." (Dkt. #16-9, pp. 123-26; Dkt. #16-10, p. 1). Appellate counsel then addressed whether she ever had a working relationship with trial counsel "and refused to challenge trial counsel's effectiveness at trial":

Prior to my appointment on this case, I do not recall ever having a conversation, social or work related, with Mr. Zellmer. I had seen Mr. Zellmer around the court house and potentially exchange[d] pleasantries with him in the elevator, but I had never had any meaningful contact with him. When I was appointed on the case, Mr. Zellmer immediately notified me in the hall outside the 16th District Court. He gave me a detailed account of the case and agreed to provide me with all the discovery on the case. This encounter in no way, shape or form created a bias in my analysis of the case. I made my decision as to whether ineffective assistance of counsel was appropriate based on an objective analysis of the law and the record. I do not believe the record on its face supports a claim. As discussed above, there may be issues but those needed to be explored in a Writ. A direct appeal did not support a point of error for ineffective. I explained all this information to Appellant during the representation. Furthermore, pursuant to *Anders*, I am prohibited from raising a frivolous point of error on appeal and I followed my ethical responsibility not to include such point.

Since my first interaction with Mr. Zellmer, I still maintain only a cordial professional demeanor towards him. If I see him in court, we may exchange pleasantries, but that is the extent of my contact with Mr. Zellmer.

(Dkt. #16-10, pp. 1-2).

The state habeas court explicitly found that appellate counsel "did not present some of the issues urged by Applicant regarding ineffective assistance of counsel because she found no merit in those issues (State's Answer, Exhibit PP)" (Dkt. #16-10, p. 173, ¶ 55) and implicitly rejected Petitioner's claim that appellate counsel was ineffective or labored under a conflict of interest. The TCCA subsequently denied relief without a written order based on the findings of the state habeas court and on the court's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner fails to demonstrate that the state court's rejection of Petitioner's ineffective assistance of appellate counsel claims was unreasonable. Petitioner does not identify a non-frivolous issue that could have been raised on appeal and upon which he would have prevailed. Appellate counsel cannot be ineffective for not raising issues that have little to no merit. Additionally, Petitioner makes only conclusory allegations that appellate counsel labored under a conflict of interest based on her alleged "sense of loyalty" (Dkt. #17, p. 14) to trial counsel. Petitioner's conclusory allegations that appellate counsel was ineffective for failing to raise certain claims on appeal and labored under a conflict of interest are insufficient to obtain habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Accordingly, Petitioner's ineffective assistance of appellate counsel claims are without merit and should be denied.

## B.  **Cumulative Error (Ground Two)**

In Ground Two, Petitioner contends that the combined effect of judicial bias, due process denial, a *Brady* violation, prosecutorial misconduct, selective prosecution and discrimination, and insufficient evidence resulted in cumulative error. (Dkt. #1, p. 6). The Director asserts this claim is unexhausted and procedurally barred. (Dkt. #14, pp. 4-8).

State prisoners must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b). In order to exhaust properly, a state prisoner must "fairly present" his claims in each appropriate state court, thereby alerting that court to the federal nature of his claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "It is not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, the petitioner must have "fairly presented" the "substance" of his federal claim. *Id.* "Normally, the exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court." *Vela v. Estelle*, 708 F.2d 954, 958 (5th Cir. 1983) (citations omitted). In Texas, all claims must be presented to and ruled on by the TCCA. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). When a petition includes claims that have been exhausted along with claims that have not been exhausted, it is called a "mixed petition," and historically federal courts in Texas have dismissed the entire petition for failure to exhaust. *See, e.g.*, *Galtieri v. Wainwright*, 582 F.2d 348, 355 (5th Cir. 1978) (en banc).

The exhaustion requirement was profoundly affected by the procedural default doctrine that was announced by the United States Supreme Court in *Coleman*. The Supreme Court explained the doctrine as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.* at 750. As a result of *Coleman*, unexhausted claims in a mixed petition are ordinarily dismissed as procedurally barred. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). Such unexhausted claims are procedurally barred because if a petitioner attempted to exhaust them in state court, they would be barred by Texas abuse-of-the-writ rules. *Id.* The procedural bar may be overcome by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. *Id.* (citing *Coleman*, 501 U.S. at 750-51).

Before the TCCA, Petitioner complained that there was legally insufficient evidence to sustain the convictions, that the prosecutor withheld *Brady* material and engaged in other misconduct, and that the trial judge was biased, but he failed to argue any of these claims in conjunction with the denial of due process and discrimination claims that he alleges resulted in cumulative error. *See Spence v. Johnson*, 80 F.3d 989, 1000 (5th Cir. 1996) (the cumulative errors doctrine provides relief only when the constitutional errors committed in the state trial court so fatally infected the trial that they violated the trial's fundamental fairness). Consequently, he did not apprise the state court of all of the facts and legal theories upon which Ground Two is based. The claim is unexhausted. If Petitioner presented Ground Two at this time to the TCCA in another state writ application, the court would find it to be procedurally barred under the Texas abuse of the writ doctrine. *See* Tex. Code Crim. Proc. Ann. art. 11.07 § 4; *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). Thus, this claim is barred from federal habeas review under the federal procedural default doctrine. *See Fearance*, 56 F.3d at 642 (the Texas abuse of the writ doctrine is an "independent and adequate" state procedural bar for purposes of federal habeas review); *see also Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review."). Petitioner fails to

overcome the procedural bar by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. Accordingly, Ground Two should be dismissed.

## C.  Fourth Amendment and Eighth Amendment Claims (Ground Three)

Petitioner asserts that his arrest violated the Fourth Amendment because he was in a state of psychosis and that the conditions of his confinement violated his Eighth Amendment rights. (Dkt. #1, p. 7; Dkt. # 1-1, p 5).

Petitioner's Fourth Amendment claim is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that federal courts have no authority to review a state court's application of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court. *Id.*; *see also Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987) ("We need not spend much time addressing appellant's Fourth Amendment concerns, for appellant does not allege, nor does our independent review of the record indicate, that appellant did not have a full and fair opportunity to litigate his Fourth Amendment claim in state court."). The opportunity, regardless of whether it is acted upon at the state level, is all that is required to preclude federal habeas review. *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981). Crucially, even errors in adjudicating Fourth Amendment claims are not an exception to *Stone*'s bar. *See Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). Here, Petitioner does not allege, much less prove, that he was denied an opportunity to litigate his unlawful arrest claim in state court. *See Coker v. Thaler*, 670 F. Supp. 2d 541, 549 (N.D. Tex. 2009). Accordingly, he is precluded from pursuing his Fourth Amendment claim on federal habeas review, and the claim should be dismissed.

Petitioner's Eighth Amendment claim appears to be asserting civil rights violations, which are not cognizable under habeas corpus law. Habeas corpus law is reserved for challenges affecting the "fact or duration" of a petitioner's confinement. *See Cook v. Texas Dep't of Criminal Justice*, 37 F.3d 166, 168 (5th Cir. 1994) ("[T]he writ of habeas corpus is the appropriate federal remedy for a state prisoner challenging the fact of confinement"). Conversely, a state prisoner's claims challenging conditions of confinement typically do not sound in habeas but rather must be brought as civil rights claims pursuant to 42 U.S.C. § 1983. *See Nance v. Ward*, 597 U.S. 159, 168 (2022). Thus, because Petitioner's allegations are not cognizable under habeas corpus law, his civil rights claim should be dismissed.

## D.  Mandatory Supervision/Parole Claim (Ground Four)

Petitioner argues his earned good time and work time credits were only considered for parole eligibility, not release to mandatory supervision. (Dkt. #1, p. 7).

Petitioner appears to argue his constitutional rights were violated because the TDCJ misapplied Texas House Bill 1433 ("HB 1433"), deprived him of his accrued good time and work time credits, and denied him release to mandatory supervision.[5] (*See* Dkt. #16-9, pp. 18-19). Petitioner's argument necessarily fails because his convictions for robbery make him ineligible for release to mandatory supervision. *See* Tex. Gov't Code § 508.149(a)(11) (stating an inmate may

---

[5] HB 1433 was legislation proposed in 1995 in the Texas House of Representatives that amended Section 8(c) of Article 42.18 of the Texas Code of Criminal Procedure in two respects: (1) it prevented those previously convicted of crimes ineligible for mandatory supervision from eligibility for any future conviction, regardless of the current offense; and (2) it provided the Board of Pardons and Parole with the authority to review all inmates eligible for mandatory supervision to determine if they should, in fact, be released to mandatory supervision. Specifically, the legislation provided a discretionary aspect to mandatory supervised release by authorizing the Board to prevent a prisoner's release to mandatory supervision if the panel determines (1) the prisoner's accrued good conduct time is not an accurate reflection of their potential for rehabilitation, and (2) that their release would unreasonably endanger the public. *See* https://www.legis.state.tx.us/tlodocs/74R/billtext/html/HB01433F.htm (last accessed on January 4, 2024). The legislation became effective September 1, 1996. *See Thomas v. Dir., Texas Dep't of Crim. Just., Corr. Institutions Div.*, No. 2:20-CV-216-Z-BR, 2022 WL 939522, at *1 n.2 (N.D. Tex. Feb. 28, 2022), *report and recommendation adopted sub nom. Thomas v. Dir.*, TDCJ-CID, No. 2:20-CV-216-Z-BR, 2022 WL 912916 (N.D. Tex. Mar. 29, 2022).

not be released to mandatory supervision if convicted of a second degree felony under Tex. Pen. Code § 29.02 (robbery)). To the extent Petitioner argues his constitutional rights were violated because he was denied parole, Petitioner's claim still fails. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("[B]ecause Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds.").

Furthermore, TDCJ-Pardons and Parole Division records reveal Petitioner has been released to parole and is no longer incarcerated. (Dkt. #25-1). As such, Petitioner's release to parole renders his federal habeas claim that he was deprived of his accrued good time and work time credits moot. *See* Tex. Gov't Code § 498.003(a) ("Good conduct time applies only to eligibility for parole or mandatory supervision . . . and does not otherwise affect an inmate's term."); *Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994); *see also Gray v. Dretke*, 135 Fed. Appx. 711, 712 (5th Cir. 2005) (federal habeas claim for loss of good time credit became moot when petitioner released on parole).

## V. CONCLUSION

Petitioner has failed to demonstrate that he is entitled to habeas relief. Petitioner fails to show that trial counsel and appellate counsel rendered ineffective assistance under *Strickland*; Petitioner's cumulative error claim is unexhausted and procedurally barred from federal habeas corpus review; Petitioner's Fourth Amendment and Eighth Amendment claims are not cognizable under habeas corpus law; and Petitioner's mandatory supervision/parole claim is without merit and/or moot. Moreover, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was

26

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97-98; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without

reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the court find Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 26th day of January, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE